Mr. Price v. Commissioner, Mr. Katz. Thank you, Your Honor. Good afternoon, and may it please the Court, Aaron Katz for Mr. Christopher Lee Price. Your Honors, Mr. Price's complaint in this case alleged that the midazolam-based protocol that the State of Alabama wishes to execute him with is a sanitized equivalent of drowning him and burning him at the stake. We produced evidence in discovery sufficient to show that our claims had merit. The State did not move for summary judgment on that pharmacological scientific question. Was there any evidence produced that distinguishes this case from Arthur v. Dunn? Your Honor, on the evidence, the medical and pharmacological evidence is very similar to Arthur v. Dunn. Of course, this case occurred after a number of additional executions in other states using midazolam-based protocols, so we think the evidence was a little bit more robust than in Arthur. But the difference is there is no precedent in this court or any other court, so far as we're aware, that would have precluded the district court from making a finding of fact after a trial that the midazolam-based protocol is inherently barbaric, essentially a per se constitutional violation. Here's the problem I have, and I have to tell you, I agree that it seems like if somebody could prove that, that that would be a problem, because just like in Bays, the Supreme Court said you can't burn people at the stake and you can't draw and quarter them, if you could prove that, in fact, the midazolam was not having an anesthetic effect, you would be essentially demonstrating that. The problem, though, I think, is that under our precedent and under the panel precedent rule, it seems to me like Arthur says it's okay to decide the second question, if you will, first, and if you don't prevail on the second question, then there's not really a need to go to the first question. Why is that not the case? So I'd say this court's decision, subsequent decision in Grayson, suggests that the second prong does illuminate the first prong, but we also have a fallback argument here, which is that in our view, we did satisfy the first prong, and we proposed to the district court But you agreed to try the case on the alternative. That was in the stipulation. The party stipulated they'd try the alternative drug. Well, I don't think it was stipulated, Your Honor. I think what happened was that the district court denied the state's motion for summary judgment, which was limited to the first question, and I think they made a passing reference to statute of limitations. But we certainly didn't, I wouldn't say we stipulated that the outcome of the second question has no bearing on the first question. Oh, no, I understand that, but you went to trial on the second issue. That's correct, Your Honor. I mean, the district court acknowledged, in my view, that there was an evidentiary dispute, a genuine factual dispute on the question whether midazolam does cause substantial or even a barbaric level of pain, but we did only have a trial on the first question, which is whether we could show, whether we could plead and prove a known and readily available alternative, and the district court did not allow us to go to phase two of the bifurcated trial because of how she ruled on the first question. Now, on that first question, we argued below that under Arthur, under Glossop, it is available to the district court to adopt a burden-shifting framework somewhat similar to what they use in Title VII cases, similar to what they use in Fourth Amendment cases. Is there any precedent for that, or are you asking the court to establish that as precedent? In other words, to shift the burden of proof from the petitioner to the state is what you're asking in your brief. Well, Your Honor, I think I'd respectfully disagree that we're trying to shift the burden of proof to the state. The burden of proof, the ultimate burden of persuasion, is always on the plaintiff in any case, whether it's a constitutional case or otherwise, and we would have had the burden to come forward with enough evidence to meet what we call the prima facie case. And what would that be in this case, in the case before us? What would be that evidence? In our view, it is sufficient to show that in the very recent past, relative to the trial, other states were executing death row inmates with pentobarbital. And that's it? I wouldn't say that's it, Your Honor. There's also no distinguishing feature between Alabama and these other states, but we believe that's enough for the prima facie case. And the district court sort of agreed with you? I think the district court... As I read the district court's handling of the thing, the district court in effect charged the state with the burden of going forward with the evidence, not the burden of proof, and then found that at the end of the day, you didn't prove the case. Well, Your Honor, I'd... In light of that evidence. Well, I think that what the district court found was that it was constrained by Arthur and the state essentially didn't have any burden whatsoever. We put in evidence, and the state's witness, it was our witness, but the state's general counsel of the Alabama Department of Corrections essentially conceded, both at her deposition and on the stand, that the things she did to try to find pentobarbital were futile. For example, shortly before our trial, and she said in the few weeks before our trial, she called up the Departments of Corrections for Missouri, Georgia, Texas, and Virginia and asked them two questions. One is, can you give me some of your pentobarbital stock? Even though she knew the answer was going to be no, the state of Texas had already made clear that the answer was going to be no. And she said, alternatively, give me the name and contact information of your supplier. Even though she knows that suppliers that engage in contracts with Departments of Corrections sign confidentiality provisions that prevent the Department of Corrections from giving to anyone, even a sister state's Department of Corrections, their name and contact information. And we proposed that the alternative way of going about finding out a supply, finding a supply, was for Ms. Hill to simply give her name, her contact information, and a proposed term sheet to one of these other Department of Corrections to pass along to their supplier of pentobarbital. The district court asked Ms. Hill why she didn't do that. And her answer was, I just simply didn't think of it. The district court at the conclusion of the hearing essentially urged Ms. Hill to do that. And we don't believe that she did. Wouldn't it have helped the petitioner's case if there had been some effort on his part or his counsel's part to contact these pharmacies for the purpose of determining whether or not they were able to obtain pentobarbital and there was no effort on their part, right? We did not personally contact pharmacies. There are pharmacies both inside Alabama and outside Alabama that one could find their phone number and contact them. But the thing that we cannot do as Mr. Price's counsel is call up a pharmacy and say, we're prepared to and can offer you a term sheet to purchase the drugs from you, a confidentiality provision. I'm not in a position where I can legally, in my view, obtain drugs from a compounding pharmacy. There's also the ethical concern about whether I can effectively, as Mr. Price's counsel, call up a pharmacy and have them send me execution drugs. But I clearly am not an agent of the Alabama Department of Corrections. And I think that the record below is clear that even the state acknowledged that only a Department of Corrections is in a position to obtain pentobarbital or midazolam or any other execution drug from a compounding pharmacy. And if someone else calls up that compounding pharmacy, they're going to be answered with the phone hanging up. There's a Dr. Zettner who was the petitioner's expert. What's his role in the case? So he was one of our experts and the principal purpose of his testimony, which we summarized, I think we read part of his deposition testimony in a trial, was to establish that it is relatively easy for a compounding pharmacy to make pentobarbital once they have the underlying ingredients. Your Honor, going back to the burden-shifting approach, we don't think that it is precluded by Arthur. No party in this circuit, so far as we're aware, had ever argued a burden-shifting framework like we are proposing. And if you look at the Sixth Circuit's recent opinions, they do suggest that a burden-shifting framework is appropriate here, given the impossibility of a plaintiff in Mr. Price's position proving a readily available alternative without a burden-shifting framework. The Sixth Circuit specifically said that ordinary transactional diligence should be required by the state. And here, we don't view what Ms. Hilditt is ordinary transactional diligence, because the thing that she did, she acknowledged on the stand, was going to be met with a no answer. So, we would suggest that the district court erred as a matter of law by not adopting our burden-shifting framework. What about Arthur's suggestion that the state really doesn't have to do anything at all? I mean, aren't we bound by that? That seems to me like that is a problem for us to be able to adopt the burden-shifting framework you're advocating because of the prior precedent rule. Well, I do agree, Your Honor, that there are some lines in Arthur that are somewhat troubling for our position. I would first say that on the good faith issue, we are not proposing that the state needs to show that they acted in good faith. Subjective analysis about Ms. Hilditt's mindset, in our view, is totally irrelevant, and it's not an inquiry that is allowed under the Eleventh Circuit's precedence. Mr. Katz, I earlier said that the court, in effect, applied the burden-shifting analysis. If, for example, the state, at the end of, to start the show, as it were, the state hadn't put anything at all on, then you'd have an argument that they had a burden of going forward and making some explanation. Well, they went ahead and did that. So, your argument has to be that somehow or another, we have to write a standard which says that Hild's testimony in the other evidence was not enough to go forward. In other words, they went forward with evidence, but it wasn't enough evidence. That's what your argument is. In a sense, Your Honor, it is. But Ms. Hild admitted on the stand, under oath. Okay. So, if we write an opinion and say what their burden is, what would we say that the state should have done? I think the state has an obligation to use what the Sixth Circuit calls ordinary transactional diligence, which I think if you want to then unpack what that means. Factually, what could the state have proven which would have discharged its obligation? Well, so I think there's two things that a state could do, Your Honor. One is to call every single compounding pharmacy in the United States and give them a term sheet. The other is a much simpler way, which is giving a term sheet and the contact information from Ms. Hild, give that to the DOCs in Georgia, Texas, and Missouri, which clearly have suppliers. We know they have pentobarbital suppliers, and say, can you pass this information on to your supplier? I thought what the pharmacies were looking for was an assurance of confidentiality. Yes, that is right. But nothing breaks their concerns with confidentiality if they have Ms. Hild's contact information and a term sheet, and they can dictate whether they're going to reach out and contact Ms. Hild. Okay. So, your argument is that that's what, had the state of Alabama done that and obtained that, what do you call it, a term sheet or an assurance of confidentiality, then there would be no reason for the pharmacies not to provide the drug to the state of Alabama? I think if a pharmacy has already shown interest that they're going to provide it to Missouri or Georgia or Texas, there's no reason to believe that they wouldn't also want to provide it to Alabama if Alabama promised them all of the things that Missouri, Georgia, and if the pharmacy could dictate whether they wanted to do the reach out. Ms. Hild essentially conceded on the stand that she knew if she was just to ask the Departments of Corrections, please give me the name and contact number of the pharmacy that you use, the Department of Corrections would say, we cannot do that, Ms. Hild. We are contractually barred from doing that. And she didn't take the next step of saying, okay, well, here, can you pass my information and our proposed contract on to your supplier? And that's what ordinary transactional diligence would be in a case like this. So your argument is that you should prevail as a matter of law because you had a primed to face your case, which was not rebutted. That's the Title VII analysis. And the Title VII analysis of the employer doesn't rebut the presumption by going forward. That one, the plaintiff wins. Yes. So your argument is Mr. Price wins on the question of an alternative. Correct. There is an alternative, which means you go back and try the question on Modaslo. Correct. Unless we want to retry Phase I and the state says in the, you know, interim year that this appeal has been pending, we've done exactly what you said was the next best thing, right? And we did give our contact information and no one has contacted us. I think that would pose a massive evidentiary problem for us below if that were the evidentiary record on a retrial on Phase I. I think you were starting to tell us, and I may have just missed it and I apologize if I did, but how do we deal with Bayes' discussion about how the state doesn't have to do anything versus the burden shifting framework? Well, I think, Your Honor, that this is where I think the Phase II question really comes into play. I don't believe the Bayes court or the Glossip court were acting on an assumption that the protocol that the state was using was so barbaric. They clearly were not. Right. Right. I mean, in Bayes, I think it was the pinch test. And in Glossip, that case was coming up from a factual finding at the district court that the petitioners had not shown, on a preliminary injunction standard, had not shown that the Midazolam-based protocol would actually cause any pain. The state in Glossip took the position that Midazolam was just as good as pentobarbital, which we think here the district court would not have found had we gone to Phase II of the trial. We believe we put in a strong evidentiary showing and would have at trial that the Midazolam-based protocol is a sanitized version of drowning someone and burning him at the stake simultaneously in terms of the level of pain that they show. If the court believes that even that type of pain requires a showing of a known and available alternative. I agree with you that if you can demonstrate that, me speaking for you personally, that, you know, that there's another alternative, but then we get into the whole issue about whether the state makes it available, we don't have to go there right now. But my concern is that under Bays, not under Bays, under Arthur, that the court, that our court already basically decided that you can decide these prongs in either order. And if you decide there's not an available alternative, then you're done. And we are bound by that. So I understand you to be saying that you don't think we're bound by that. And I just want to sort of find out why, because you might be right, but I'm not getting it yet. Well, I don't think if you go back and look at the Arthur decision, at no point did the Arthur court say, even assuming that Midazolam causes a barbaric level of pain, it's essentially equivalent to drawing and quartering someone or throwing them in a snake pit or burning them at the stake. We don't think you've shown a known and readily available alternative. And the burden is still on you to show that. I don't read anything in the Arthur opinion to suggest that. I think you have to read Arthur as having come up on a pair of factual findings, both of which the court found was not clearly erroneous. The first being that Midazolam does the job that the state says it does. And if we were here after a phase two factual finding by Judge DuBose, that Midazolam works essentially as good as pentobarbital or nearly as good, I don't think we would have much of a case, to be frank, Your Honor. But Judge DuBose did not make such a factual finding. Judge Watkins did in Arthur. But we believe that the evidence that we would have put in below would have been sufficient for Judge DuBose to reasonably find that the Midazolam-based protocol does, in fact, create an unconstitutional level of pain, a level of pain that's categorically unconstitutional. And that even if it's the state's only alternative, they simply can't use it. I certainly don't read anything in the Supreme Court's precedents to suggest that if the state is down to drawing and quartering as its only option, it can go forward with that. I agree with you on that. I mean, I've told you what my issue is. Yeah. Well, I would say, Your Honor, we did in our briefs say if the court believes that it is completely bound by Arthur on every question that we've presented in our briefs, we believe this is a perfect case for unbound review. And that's for the proposition that the plaintiff has the burden of proof. You have the burden of proving the alternative. If you have failed to prove that the current protocol is not, what I would say, facially unconstitutional. It went off on the alternative. That's what the court tried, was the alternative. And the rule of law is that the plaintiff has the burden. You'd have a different kind of case, in my view, had you started off and the state put on nothing. Then the question does become about this going forward with the evidence. The problem here is the state went forward with the evidence. So then you have to argue somehow or another that the state didn't do four or five things. You've listed them. And that's part of the substantive obligation on the part of the state in going forward with the evidence. Yes, Your Honor. Yes. If the state had done those things and can't obtain compounded pentobarbital, then you lose. Well, I would still argue, Your Honor, that had we gone through a phase two. Let's assume the state, let's assume the fact of the matter is it's inescapable in a hypothetical case that the state couldn't get the alternative drug. And it's your burden of proving that it could. Then you would lose. Well, I would still argue, Your Honor, that had we gone to a phase two and proven that midazolam is not just a little bit more painful. No, I understand that. Well, and then you're going back to something the court didn't try. Correct. I mean, one of the issues in the first. I mean, we're dealing with what the court tried. But your point is that it doesn't really matter that whether there's an available alternative is not an issue that we even get to if the only method that the state is proposing and has available is so barbaric that under any circumstances it would violate the Eighth Amendment to use it. Isn't that your position? Exactly right, Your Honor. And the statement of issues in our brief, we believe that's encapsulated in issue one. Your argument is the district court erred by not going forward and taking that evidence. Yes, the manner in which the district. I understand why the district court phased things the way that she did. Whether she did it or not, your argument has to be that the court erred. Yes, in any our position, Your Honor, is that in any case, the court should, if there's a genuine issue of material fact, should hold a trial on the medical question. But then the case had never been tried the way it was, is your argument. We have a problem with the way the case was tried, correct? No, no, that's got to be your argument. I mean, there's no cross appeal here. You haven't cross appealed the way in which the court tried the case. That's right. I don't believe the way the court decided to bifurcate the case is a, you know, was a final judgment. We wouldn't have gone up on interlocutory appeal there. No, no, I'm not talking about an interlocutory appeal. I'm talking about cross appealing the court's judgment. Well, Your Honor, your argument is, as I hear it, let's forget the, you know, presumptions vanish once there's evidence introduced. Do you agree with that? Yes. Okay. So once the state came forward with an explanation of why they couldn't obtain the alternative drug, they put forth the evidence. Your argument has to be that the presumption was not knocked down because that evidence wasn't strong enough to put the burden back on you. Now, that's the argument you make when you're appealing the phase of the case that the court tried. Now, I hear you also making an argument, but you didn't cross appeal that the court should have tried the vandazzling point first. We simply filed an ordinary appeal. We're the losing party, Your Honor. I do think if you go to question one of our brief. I know you're the losing party, but you could have crossed appealed on the ground that the court made a terrible mistake. Well, I would point the court to question number one in the issues presented, whether the eighth, and I'm just going to read it from our brief. This is on page one of our brief. Whether the eighth amendment requires per se, a death row inmate challenging the constitutionality of a state's lethal injection protocol to identify a specific supplier that is willing and presently able to provide an alternative, more humane drug to the state's Department of Corrections. We think the answer to that is no. That should not be a per se requirement. But I agree, Your Honor, that we are also arguing, and I feel strongly about our position, that we put in enough evidence to make a prima facie case that had no— I would assume that otherwise the court should have entertained the state's proof anyway. Why would the court go to the trouble of entertaining the state's explanation if it didn't think you had a prima facie case? I do not know, Your Honor. Well, I mean, that makes no sense at all. Will you agree with that? Somewhat, Your Honor. Yeah, I do. But I do think— If you had a Title VII case and all that was tried, there was no evidence going to the presumption, so all that was tried was the employer's explanation, then you'd have to say that the court assumed a prima facie case. I think that's right, Your Honor, but there is also at least a theoretical possibility that the district court could find that Ms. Hill is simply not credible when she says I called up the pharmacy and they said no. Well, not credible is a— we have to give the district court deference on credibility. Yes. The district court clearly found that Ms. Hill had called up at least 18 pharmacies in Alabama and all of them said no. We did not argue that that was an incredible response. I think Ms. Hill is telling the truth when she says I called up 18 pharmacies in Alabama and they said no. And the district court, in effect, held that that was enough to rebut the presumption. I would disagree with that, Your Honor. I think that she did not adopt the burden-shifting framework that we proposed. The district court asked, and this is at page 51— I know she didn't talk about presumptions. Correct. But at page 59 of the trial transcript, she specifically asked Ms. Hill, why did you not do what they are asking? It seems simple. Why did you not do that? And she urged Alabama to go and do that. And I think that is a recognition, Your Honor, that the thing that Alabama came forward with to rebut our presumption or— Your argument is that the court, in effect, found her not credible or her evidence lacked probative value. I think what the district court found was that the state has no burden to go through ordinary transactional diligence, Your Honor. Well, then the state's proof was irrelevant. If that's what the district court thought the law was, it didn't matter whether Hill testified or not. I definitely see that view, Your Honor. And the state certainly viewed the information as irrelevant. I think the state's position is that they don't have to do anything. Okay. I see I've used up most of my rebuttal time. That's all right. You've got time. Mr. Govatt. Is it your argument that the state doesn't have to do anything? Yes. Well, that is the standard. Why did you put on Ms. Hill? Well, simply, Your Honor, we did not actually call Ms. Hill, as Mr. Price pointed out. He called Ms. Hill as a witness. I know that. But even if the state doesn't have a legal burden, the state still presented evidence and that's perfectly within our right at trial. And that's the evidence that the court considered. And that's why this case is a relatively straightforward case, that the trial court ultimately held that Mr. Price had the burden of proof. He failed to prove the compound of pentobarbital was available to the department. And there's no clear errors in that particular fact-finding by the court. If Mr. Price is right, that I don't make you think of the show. But if Mr. Price is actually is right about the Arthur situation, and Arthur does not bind us to conclude that the second prong can be looked at first, and if it's found that the second prong isn't proven, then there's no need to look at the first prong, the first prong being whether or not the form of execution actually violates the Eighth Amendment. If he's right, then would you agree that it was error for the district court to have ruled on this on solely the second prong without considering whether under the first prong the MDASLAM protocol is a violation of the Eighth Amendment in its own right? No, Your Honor. Again, we would take issue with his perspective. But no, even if for some reason I'm not exactly sure still what the argument is on Arthur, but from Price's perspective, but the availability of an alternative is a required element in a method of execution claim. Well, yes and no, right? I mean, if, for example, we know from Bayes, because the Supreme Court specifically said it, that if, for example, the state had the only available execution method as drawing and quartering, that that is unconstitutional under the Eighth Amendment. And it wouldn't matter whether or not there were some alternative that was proposed by the defendant, by the petitioner, I guess I should say, or not. That would still be unconstitutional. The state could not, under any circumstances, carry that out. Would you agree with me on that? Absolutely. Okay. And so what he's arguing is that effectively the MDASLAM protocol is the equivalent, the chemical equivalent of burning someone at the stake and drowning them, both of which, I mean, presumably would be unconstitutional under the Eighth Amendment. If, in fact, you were to actually drown somebody or actually execute them by burning them at the stake. So if he's right about that, why does it matter whether there's an alternative or not? I mean, the Supreme Court has recognized that there are some forms of execution that in and of themselves are violations of the Eighth Amendment, and it really doesn't matter whether there's an alternative or not. Absolutely. And because when you actually look at the claim that he raised in his complaint, he's not raising that. In a situation where there is no method, he raised the method of execution challenge, and that requires proving an alternative. For example, drawing and quartering or public dissection. There is no method that could ever be done to make those constitutional because they're, as Bayes pointed out, Your Honor, those are intentionally designed to inflict pain. In contrast to what Mr. Price argued, he was not arguing that lethal ejection under any circumstance is never constitutional. He was raising a method of execution challenge on this protocol that the Department is using. And if he's alleging that type of protocol, you have to be able to prove an alternative under Bayes and Glossop. That's just what Bayes and Glossop hold. I mean, I think Bayes and Glossop can be read differently. And, in fact, there's a line in Bayes that says there is no dispute that if the first drug does not anesthetize, something to this effect, does not anesthetize the petitioner, then it would be unconstitutional to administer the second and third drugs. And that's essentially what they are arguing. And so if the Supreme Court has said that itself in Bayes, which I believe it has, then I don't think you can really say that if they could prove that, that they can't have an opportunity to prove that necessarily just because they haven't had, just because they haven't shown that an alternative is available. I mean, I recognize there might be a problem in our circuit with Arthur, and that's why I'm asking you to set that one aside for the moment. And, again, Your Honor, I mean, look to Glossop. Because in Glossop, that was different than in Bayes. In Glossop, they were alleging that they were not conceding anything, like in Bayes, the petitions in Bayes. In Glossop, they were challenging the exact same protocol that Alabama uses, and they were contending that medazzling wouldn't work. And the Court still held in that that that's a required element, the alternative prong in Glossop. So, again, in this particular case, they're challenging the same protocol. They're making the same type of claims as the petitioners in Glossop. You have to prove an alternative. The trial court, the district court, analyzed all those facts, and they held ultimately that Price failed to meet his burden of proof as to that particular claim. And when you look at the facts that were actually in front of the district court, there is no clear error in the trial court's determination of those facts. And you look at all those facts that they considered. They had a trial on this. They allowed Mr. Price to present evidence, and he simply didn't meet his burden. Some of the most important facts in that case are, number one, that the Court noted that the Department used to use penobarbital in its execution protocol, but in September 2014, they had to switch to medazzling because they could no longer obtain penobarbital. And yet that's the exact same drug that Mr. Price is alleging should be used as an alternative. The trial court also considered the evidence from the ADOC's general counsel, who testified that she had contacted at least 25 different pharmacies from 2013 to 2015, and none of them were willing to provide the Department with penobarbital. And, in fact, some of them couldn't even obtain the ingredients. Well, why could she not have asked for the names of the pharmacies under the same conditions as the other states who were able to get penobarbital? In other words, she never offered confidentiality, did she? She did not, and she explained that at the trial. And that testimony was in front of the district court when it made its factual findings, but she explained that when she had these conversations with these pharmacies, she never got to the point where she could discuss confidentiality because they either didn't have the ingredients or weren't willing to help. And, again, the court had those. They weren't willing to help because they wanted an assurance of confidentiality. Well, that's not what she testified to. She testified that we couldn't even get to a point in the conversation to discuss confidentiality because they just weren't willing to help. Well, it just seems strange that the pharmacies, they'll provide the drug to Missouri and Georgia and Virginia, but they won't provide it to Alabama. Your Honor, and I understand that, but that's a problem that apparently is happening across the country as well. That was a problem that occurred in Oklahoma. That was a problem that occurred in Arkansas in the McGee case, and that was a problem that occurred in Ohio. For whatever reason, Missouri is able to obtain penobarbital. Alabama has tried, and the district court considered that and said that Price still had not met its burden to show that it was available. She could not take the next step. If you tell me who the pharmacy is and if I contact the pharmacy, I will provide you confidentiality the same way that Georgia and Missouri and Virginia provides it. I don't understand why Alabama couldn't do that. Well, a couple of responses to that, Your Honor. That is something that the district court considered that. But as the district court found, even if she had asked those questions, that was not evidence that penobarbital would actually be available. There was no evidence. Again, that would be kind of throwing a shot in the dark because there's no evidence that the supplier would even return. But also, it's problematic the way this argument from Price came up at trial because he never alleged in his amended complaint that there was this list of questions that the department needed to ask. He didn't present them in discovery. He didn't ask Ms. Hill about them in her deposition. He asked about them at trial, and it was sprung at trial. And so, of course, there can always be a list of questions. There always could be more questions that could be asked. There's no limit to the types of what-ifs you could get. But the problem is here is asking those questions, but there's no assurance that anything would have changed. And by focusing on what the department did instead of looking at what Price's burden was, as he admitted here today, he didn't contact any pharmacies. And so, again, we call it burden shifting or not. Mr. Price. But honestly, I mean, if he contacts the pharmacies and they're so concerned about confidentiality, they're certainly not going to tell him, yeah, we'll provide it to the state to execute your guy. I mean, that just seems really unreasonable to expect that to happen. Well, again, the district court didn't err because there's no evidence. Because he didn't contact. So we don't know what the pharmacies would have said to him. But think about what you're asking. I mean, if it's a completely unrealistic expectation, which it seems like it is, then why would we require him to go through it? Well, because there needs to be, again, the burden is on, that's quite clear, it's on him. And there's a threshold, just general question that Mr. Price is not addressing before we even get to the steps of confidentiality. The burden is on him. But it's not like he sat around and done nothing. I mean, he's called pharmacies to find – he's had people say that these drugs can be compounded. He's had people come in and say and point out that these drugs are available in other states. So it's not as though he's done nothing. I mean, I'm not sure that's accurate. Well, he sent some – about all he did was send some subpoenas to four departments of correction. That's about it. And as he admitted here today, he did not call or Price did not call a single pharmacy. And yet he's saying the department, one of the ways they could do that. But again, wouldn't that have been just a – I mean, wouldn't that have been a futile effort? I mean, no – as we all know, because of the confidentiality requirements, what pharmacy is going to say to counsel for a death penalty petitioner, yeah, I'll be happy to provide the drugs. I mean, that's just not going to happen. That's just completely – I think that's absurd. Well, if it was that – Is that what you think his requirement is that he has to meet? It should at least be able to pick up a phone, Your Honor. If it was that easy to show it, he could present that evidence. But, again, if something is truly available, at least what he could – Counsel, that's kind of ridiculous. I'm sorry, Your Honor. It's kind of ridiculous. If a drug was – I'm sorry, Your Honor. This court tried this case on a very, very narrow issue, and that is whether or not the drug was available, not whether or not it would substantially reduce the pain caused by midazolam. None of that was in this trial. Only the – is it available? Had the court found that it was available, it would then have to put on – receive evidence on midazolam and evidence on penobartopol to find out whether or not it fit the equation. Do you agree with that? Yes, Your Honor. Okay. So the court just tried this very narrow question. Correct. Is it available? Correct. And Mr. Price has not found any clear errors in the court's conclusions. I just want to point out as well that Mr. Price did not object. The question is whether her testimony was enough. Excuse me. I viewed the court as subconsciously applying a presumption. But it doesn't matter. The State's explanation came in. Correct, Your Honor. So presumption or no presumption, the State went forward. I agree they called the State's witness, but he was examined, et cetera. That is correct. And the court considered that as – So the question is whether or not Hill's testimony, in my view, is sufficient to rebut what we can call a presumption. Yes, Your Honor. And the district court held that it was. And there's just really no – The district court in effect said that she did enough. Correct, Your Honor. End of story. Well, and not only that she did enough, but that Mr. Price failed to prove anything. Well, of course, if she did enough to rebut the presumption, then the burden of proof is on the plaintiff, of course. And she said the plaintiff didn't carry the day. So, in effect, the court is saying Hill's testimony was enough to rebut the presumption. Your Honor, if that's what – again, Your Honor, I don't know. That could be read that way. But from our position, we read the district court's order. She wasn't applying a burdenshipping approach. I understand. No. But she still had to have held that Hill's testimony was sufficient. Yes, Your Honor. So there's no alternative. That's what was before the court. Is there an alternative? And the court held that there was. Not whether it's adequate or anything else, just whether there's an alternative. Correct. Correct. Of course, it's clear that it's – penitentiary is readily available, but it's not readily available to Alabama, right? Is that clear? It's readily available to Missouri. It's readily available to Georgia. It's readily available to Virginia. It is available to – at least in the past, it has been available to those states, yes. But it's not readily available to the Department of Corrections in Alabama. And I would just say, too, Your Honor, again, based on the evidence that we have here, again, Ms. Hill was calling states in Alabama, but that's consistent with, as I mentioned before, what is occurring in trials in other states as well. But in this particular case, there was no evidence. For example, if something was truly readily available, any other type of drug, for example, I'm not suggesting this has a role in lethal injection matters, but value, it would be very easy to show that that is readily available to anyone. You could call a pharmacy. You could say, do you have access to Valium? Presumably, the pharmacy would be able to say, yes, we have access to that. In fact, we drew a prescription just last week on that. Now, whether – that's a step that Price could have taken and didn't take in this particular case. We have never argued, nor has the 11th Circuit precedent ever argued, that they have to somehow send out term sheets or prove confidentiality or prove anything like that to meet their burden. We would contend that just an initial step was just even showing that pentobarbital is available to anyone would have been a step that they wanted to show. Didn't they demonstrate that through their expert testimony that said that it's easily compoundable and readily compounded? No, Your Honor, because, in fact, what the district court noted, that when you boil down the expert's testimony, all he was saying that if you have the ingredients, he was assuming you could get the ingredients. It was a relatively easy process. We didn't dispute that. The problem is finding the ingredients, finding someone who will do it, those are the things that weigh in the availability process as well. Just one final point that I'd like to raise in this particular case is the main point is the trial court's ruling was not clearly erroneous and Price hasn't shown that. But secondly, this court and Arthur M. Brooks has set out the standards for these particular cases. It's clear the burden does not shift for Mr. Price. He has the burden of showing that. And he's admitted in his brief those are the standards, and those standards control in this particular case, and those are consistent with Bayes and Blossom. Because the trial court did not err, it's clear, and clearly erroneous in any of its fact findings on denying relief to Mr. Price. We would ask this court to affirm. Okay. Mr. Katz. Thank you, Your Honors. I'd like to first address a question that Judge Rosenbaum had asked, which is about the Eleventh Circuit precedent on whether you can resolve a case just by looking at the readily available alternative. I'd point the court to the first full, actually the second paragraph of Section 5 in the Grayson opinion, that's 869F3-1204, which, of course, was after Arthur. And the court said, thus the district court cannot properly apply the Bayes standard without first making a finding regarding the risk of pain, if any, the current three-drug protocol presents. Right. And I sat on that panel. But if we did that in violation of Bayes, not Bayes, because I don't think it was in violation of Bayes, but if it was in violation of our precedent in Arthur, then we have to go with the Arthur panel precedent, don't we? Well, I think what the Grayson opinion, how I read it, is that there is a path under Arthur where, if the evidence would have been sufficient for the district court to find. Put Arthur aside. All that was tried in this case was whether the drug was available, period. Not whether it would do any good or be better than midazolam. That's the way the case was framed for the trial. What? So phase one of the trial, the only trial we got. Forget Bayes. You're correct. This case was tried on one single point. Was the drug available? Period. Not the quality of the drug or anything else or its comparison with midazolam. That's correct, Your Honor. Now, the judge did, when she put in her order, saying it was going to be a bifurcated proceeding, she did. I looked in the record for something that would tell me that the judge was off on the wrong path, but the lawyers never said that. Nobody that I could find in the record said, Judge, you can't try the case this way. You're correct, Your Honor. It's not possible to try it this way. So we did not object to her deciding to hold the sort of known available alternative first. On whether it was available, not whether or not it was better. Correct. Now, I will say, Your Honor, I expected that she would rule in our favor and that we would get to phase two of her bifurcated trial. And we made clear it's. That's right. No, you get to the question then whether midazolam is bad and then whether or not the alternative is substantially better. Those are my words, but that's the gist of it. Correct. So, Your Honor, just to back up a step, Mr. Price has been under a death sentence since 1993. We know that. And he did not challenge, and I've represented him for many years, we did not challenge the penta-barbital based protocol for a reason. We are confident that penta-barbital will put you into a coma-like state where the second and third drugs of the three-drug protocol will not cause pain. Mr. Price had at the ready evidence that he would have put in at phase two of the bifurcated trial. We understand it, but you tried the question whether it was available or not, and that's what we have. One question, is it available? And the question is whether or not the district court. Your argument has to be that the standard is higher on the state and it's rebutting the presumption than just making some phone calls. Correct. So let me try it two ways. The first is we think that the district court did, in fact, reject as a matter of law our burden-shifting framework, and we argue that's a legal error on de novo review. Alternatively, if she did adopt our burden-shifting framework, if she had done that essentially sub silencio, we think it was clearly erroneous for her to find that the state rebutted our prima facie showing when Ms. Hill admitted under oath on the stand at trial that the way that she tried to obtain penta-barbital from compounding pharmacies was not even the same as how she obtains midazolam, rocumirium bromide, and potassium chloride. She admitted on the stand in response to our questioning that when she tries to obtain the other drugs in the protocol, she calls the pharmacy and says, here's the terms. This is the price we're going to pay. We're going to offer you confidentiality. Here's the amount of stock we're going to buy. And she admitted she did none of those things when she called pharmacies seeking penta-barbital. We're not asking for a list of a thousand questions. Did your vote to strike your testimony as non-probative? I believe, Your Honor, that if this court were to hold that you need to at least go through ordinary transactional diligence. Not good faith, but ordinary. You didn't move the court to strike her testimony as non-probative. Well, Your Honor, I actually thought her testimony was entirely helpful to us. I think that her admissions on the stand that she did not use ordinary transactional diligence when attempting to acquire the penta-barbital from compounding pharmacies proved our point that the state had not gone through ordinary transactional diligence. And if Mr. Govan doesn't believe that the availability of penta-barbital to three or four additional Departments of Corrections that look exactly like Alabama for all intents and purposes is not enough to make a prima facie case, I don't know what would be enough. I would also point out that we did more than simply put Ms. Hill on the stand and ask a few questions. No, we did not call up a compounding pharmacy. Yes, we did serve subpoenas on Virginia, Texas, Georgia, and Missouri. And we even litigated in the 11th Circuit, Northern District of Georgia rather, when the state of Georgia refused to respond to our subpoena. The state of Missouri also refused to respond to our subpoena. And we had to work out a stipulation on how they would answer it. But we did make significant efforts to find out the names of the suppliers that other states use. Not so we could parade those names out in the newspaper, but because our client has an interest, if he's going to be executed, to be executed in a way that's not going to cause him an extreme, and in our view, unconstitutional amount of pain. And the efforts that we went through and the results that we were able to obtain, or not obtain as the case may be, proves what the District Court said in footnote 8 of her opinion, which is that the burden that she understands Arthur to place on a plaintiff is impossible to me. Now, I would submit that how she reads Arthur, how Judge DuBose read Arthur, is incorrect. It's not dictated by the terms of Arthur. But the Supreme Court put the burden on the plaintiff, for heaven's sake. The plaintiff has to prove the alternative. Yes, the Supreme Court did not flesh that out, though, Your Honor. No, no, but it's obvious from my reading of the opinion that that's the burden. I certainly see that as being one way to read the opinion. I look at the Supreme Court of the United States, and they laid out exactly what the burden is. The District Court cited it in the opinion. I think that's a fair reading of Glossop. I think Arthur reads Glossop one way, and then the District Court reads Arthur another way, and you keep stacking up. Well, we're not by the Supreme Court of the United States. I agree with that, Your Honor. I certainly don't think that anything in Glossop does the following. One is, say, even if you prove that it's a barbaric method of execution, you still have to show an alternative. I don't think Glossop says that. And then the second thing I don't think Glossop does is say, even if the plaintiff can show that the state did not use ordinary transactional diligence in trying to get the alternative, the plaintiff still loses. I don't think anything in Glossop says that. And here, all we asked was for the state to undertake ordinary transactional diligence, and we think the record is clear that they didn't. Ms. Hill essentially admitted that she didn't. I see I have two minutes left, but if the Court has no further questions, I'm happy to yield. I think I understand your position. Thank you, Your Honors. The Court will be in recess under the usual order. All rise.